UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kim Leszyczynski,

                Plaintiff,      Case No. 18-13432

v.                                Judith E. Levy
                                United States District Judge
The Home Depot USA Inc.,
                                Mag. Judge David R. Grand
                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12]

Plaintiff Kim Leszyczynski brings this case against Defendant The Home Depot USA Inc., alleging that she slipped and fell on a red Slurpee beverage in Defendant's Roseville, Michigan location. (*See* ECF No. 1, PageID.2.) Plaintiff was injured as a result of the fall and is suing Defendant for damages on theories of premises liability, negligence, respondeat superior, and nuisance. (*Id.* at PageID.17-22.)

Before the Court is Defendant's October 2019 motion for summary judgment and attorney fees. (ECF No. 12.) Plaintiff did not respond to the motion. For the reasons set forth below, Defendant's motion for

summary judgment is GRANTED as to all claims, and this case is dismissed. The parties may submit supplemental briefing on attorney fees.

## I. Background

Plaintiff is a Florida resident who, in 2016, regularly traveled to Roseville, Michigan for a real estate renovation project. (ECF No. 12-3, PageID.146.) On November 2, 2016, Plaintiff and two companions, Ms. Stephanie Floyd and Mr. Paul Skipper, drove to the Roseville Home Depot to purchase home repair supplies for this project. (*Id.*) With Ms. Floyd waiting in the car, Plaintiff and Mr. Skipper passed through the store's main entrance, turned left, and began walking toward the Garden Center. (*Id.* at PageID.151-152.) While walking, Plaintiff looked ahead of her and toward the Garden Center. (*Id.* at PageID.153.) Plaintiff suddenly "felt [her]self in motion, [her] right leg slid out from underneath [her]," and then she "was on the ground," having "basically [done] the splits and landed on [her] knee." (*Id.* at Page.151.) Plaintiff realized that she had slipped on an icy, red "Slurpee" drink that had "splattered" across the floor. (*Id.* at PageID.152.) Plaintiff did not specify the size of the splatter in her pleadings or deposition, but noted that the liquid was "a

2

bright, red Slurpee type of thing" and that some of it wet her hand and stained her pant leg. (*Id.* at PageID.153.) Mr. Skipper, who had been walking "a couple of feet" to Plaintiff's side, did not fall. (*Id.* at PageID.152.)

After falling, Plaintiff was "in shock." (*Id.* at PageID.153.) Mr. Skipper helped Plaintiff to her feet so that she could "hobble[]" to the Garden Center to finish her shopping. (*Id.*) After paying for her items and returning to the car, Plaintiff spoke with Ms. Floyd about the accident. Plaintiff realized that she needed to buy an additional item, and Ms. Floyd suggested that Plaintiff also report her fall. (*Id.* at PageID.153, 176.)

Plaintiff estimates that she and Ms. Floyd re-entered the store about twenty to thirty minutes after Plaintiff had fallen. (*Id.* at PageID.154.) Plaintiff spoke to a cashier, Ms. Allison Treppa, and asked whether anyone had cleaned up a red spill. (ECF No. 12-9, PageID.194.) Ms. Treppa, whose station had a partial view of the aisle where Plaintiff had fallen, was unaware of a spill and called over the manager on duty. (*Id.* at PageID.192, 194, 197.) When the manager—Ms. Kathleen Steinberg—arrived, Plaintiff described the incident and wrote down her

3

contact information. (ECF No. 12-3, PageID.154.) Ms. Treppa also completed an incident report. (ECF No. 12-10, PageID.200.)

Though Plaintiff could not remember whether she showed Ms. Steinberg the spot where she had fallen, (ECF No. 12-3, PageID.154), Ms. Steinberg attested that she inspected the spot that Plaintiff pointed out while Plaintiff looked on from the counter. (ECF No. 12-6, PageID.177-178.) Ms. Steinberg did not see any red liquid. (*Id.* at PageID.178.) Plaintiff then asked Ms. Steinberg about a product in the Garden Center, and Ms. Steinberg directed another employee to assist her. (*Id.*)

After Plaintiff went back to the Garden Center, Ms. Steinberg ordered Ms. Treppa to ask if anyone had "cleaned something up with some paper towel" and to find out whether "there was anything in the garbage up there in the garden department and around [the] service desk area, in the immediate vicinity." (*Id.* at PageID.179.) Ms. Steinberg also asked the employees in the area whether they had seen any red spills or seen anyone fall. (*Id.*) The employees indicated that they had not, and Ms. Treppa attested that nobody found any red liquid in their garbage cans. (ECF No. 12-9, PageID.194.) Ms. Treppa also noted in her deposition that she had not personally seen any red spills, that she was

4

unaware of anyone else falling, and that she had just returned from break and had not heard any other reports of a spill in the Garden Center. (*Id.* at PageID.197.) None of the Home Depot employees took pictures of the site where Plaintiff had fallen. Ms. Steinberg noted in her deposition that, "had there been a liquid there, I would have taken a picture but because there was nothing there, I did not take a picture." (ECF No. 12-6, PageID.181-182.). During Plaintiff's second visit to the store, Plaintiff took pictures of the spot where she alleged that she fell, but the pictures do not show any red liquid spill. (*See* ECF Nos. 12-3, PageID.154; 12-4, PageID.166-168; 12-6, PageID.177.) Rather, they are close-ups of a clear off-white floor. (ECF No. 12-4, PageID.166-168)

After reporting the incident, Plaintiff left the store and did not immediately seek medical attention or otherwise contact an emergency provider. (ECF No. 12-3, PageID.154.) About a week after the fall, when Plaintiff had returned to Florida, she sought treatment for pain in her right ankle, right knee, and left groin. (*Id.* at PageID.156.) Plaintiff was additionally experiencing pain in her neck and left shoulder. (*Id.* at PageID.157.) To this day, Plaintiff alleges that she experiences residual

complications from these injuries, including general pain, driving difficulties, and reduced movement. (*See id.* at PageID.158-159.)

Plaintiff filed this lawsuit in Macomb County Court on September 20, 2018. (ECF No. 1, PageID.15.) Defendant removed the case to this Court on November 2, 2018 pursuant to diversity jurisdiction, (*id.*), and the parties conducted discovery through 2019. At Plaintiff's deposition, she testified that she did not believe there had been a problem with the Roseville Home Depot's lighting, and she had not experienced problems "seeing where [she was] walking." Plaintiff additionally attested that, to her knowledge, there were no physical obstructions between the aisle and the Garden Center where she fell. (ECF No. 12-3, PageID.153, 155.) Plaintiff also attested that, prior to her fall, she had been to the Roseville Home Depot location "approximately about 200 times." (ECF No. 12-3, PageID.142.)

On October 3, 2019, Defendant moved for summary judgment on all claims. (ECF No. 12.) Plaintiff did not respond.

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

"While sitting in diversity, a federal court must apply the substantive law of the state in which the court sits." *Maldonado v. Nat'l Acme Co.*, 73 F.3d 642, 644 (6th Cir. 1996). Michigan law applies in this diversity case.

**III. Legal Claims**

For the reasons below, the Court GRANTS summary judgment to Defendant as to Plaintiff's claims for premises liability, negligence, respondeat superior, and nuisance.

1. Premises liability

To prevail on a premises liability action under Michigan law, Plaintiff must prove the following elements: (1) the defendant owed a

duty; (2) the defendant breached that duty; (3) an injury proximately resulted from that breach; and (4) the plaintiff suffered damages. *Benton v. Dart Properties, Inc.*, 270 Mich. App. 437, 440 (2006). "[T]he existence of a legal duty is a question of law for the court to decide." *Anderson v. Wiegand*, 223 Mich. App. 549, 554 (1997). "Unless the defendant owed a duty to the plaintiff, the analysis cannot proceed further." *Bell & Hudson, PC v. Buhl Realty Co.*, 185 Mich. App. 714, 717 (1990).

There is no dispute in this case that Plaintiff was Defendant's business invitee. Under Michigan law, a Defendant owes its business invitees a higher duty of care "not only to warn the invitee of any known dangers, but . . . to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 597 (2000).

However, Defendant's duty as a landowner "does not generally encompass removal of open and obvious dangers." *Lugo v. Ameritech Corp. Inc.*, 464 Mich. 512, 516 (2001). Whether a danger is "open and obvious" is an objective question: It does not matter how a particular

8

plaintiff encounters a specific condition, but rather, whether "an average user with ordinary intelligence would have been able to discover the danger and risk presented upon casual inspection." *Slaughter v. Blarney Castle Oil Co.*, 281 Mich. App. 474, 478 (2008).

In this case, viewing all evidence and inferences in the light most favorable to Plaintiff, the "red Slurpee" splatter was open and obvious. "[W]hen a plaintiff or other eyewitness admits that a hazard is visible after an incident, this testimony reinforces and bolsters the conclusion that the condition was open and obvious under an objective standard." *Richard v. Meijer, Inc.*, No. 342766, 2019 WL 1780670, at *6 (Mich. Ct. App. Apr. 23, 2019). In this case, Plaintiff attested that she was not looking at the ground when she was walking toward the Garden Center, but that once "on the ground[,] that's when [she] noticed all the splattering." (ECF No. 12-3, PageID.153.) After falling, Plaintiff could immediately "tell [that there] was a red, bright red Slurpee type of the thing . . . [she] could tell because of the color." (*Id.*)

Under Michigan law, this fact is dispositive. Plaintiff's claim is analogous to the premises liability claim in *Richard v. Meijer*, where a plaintiff slipped and fell on a "very light coating" of water in the checkout

9

area of a grocery store. *Richard*, 2019 WL 1780670, at *1. In *Richard*, the Michigan Court of Appeals found that though the plaintiff subjectively did not see a film of water on the floor prior to falling as a result of it, it was conclusive that "plaintiff[] in this case could identify the danger in question once they looked at the floor[, rendering] the danger open and obvious according to plaintiff's own evidence." *Id.* Like the *Richard* complainant, Plaintiff "should have discovered the condition and realized its danger." *Lugo*, 464 Mich. at 516; *cf Watts v. Michigan Multi-King, Inc.*, 291 Mich. App. 98, 102 (2010) (finding a genuine issue of material fact regarding whether the danger was open and obvious when "Plaintiff testified that both before and after her fall, the tile did not look shiny or wet, and nothing else about its appearance appeared out of the ordinary" and Defendant offered no evidence to demonstrate that the floor was visibly wet or otherwise dangerous).

Some open and obvious dangers present special circumstances that rekindle a landlord's duty to protect invitees, even if the invitees could have readily perceived the dangers on their own. *Lugo*, 464 Mich. at 518. These are "unreasonably dangerous" or "effectively unavoidable" dangers such as "an unguarded thirty foot deep pit in the middle of a parking lot"

or "a commercial building with only one exit for the general public where the floor is covered with standing water." *Id.* However, Michigan courts have held that "neither a common condition nor an avoidable condition" will generally rise to these standards. *Freeman v. Kmart Corporation*, No. 331224, 2017 WL 2463407, at *4 (Mich. Ct. App. June 6, 2017) (quoting *Hoffner v. Lanctoe*, 492 Mich. 450, 463 (2014)). Plaintiff has not argued that the red Slurpee splatter constitutes a special circumstance, and the Court does not find that a red liquid spilled onto an off-white floor in an unobstructed aisle would rise to the standard.

Because the red Slurpee spill was an open and obvious danger and because Defendant does not have a duty to defend Plaintiff from open and obvious dangers, the premises liability inquiry ends here. *Bell & Hudson*, 185 Mich. App. at 717. As a matter of law, viewing the facts in the light most favorable to Plaintiff, no reasonable jury could return a verdict for Plaintiff with respect to the premises liability negligence claim. Accordingly, the Court GRANTS Defendant's summary judgment motion as to this claim.

2. Negligence and Respondeat Superior

In addition to Plaintiff's premises liability claim, Plaintiff also brings two separate claims for negligence and respondeat superior. (ECF No. 1, PageID.19-21.) As to negligence, Plaintiff argues that Defendant "creat[ed] an unreasonable slip and fall hazard" through several negligent behaviors, including ineffective maintenance training and insufficient cleaning methods. (*Id.* at PageID.19.) As to respondeat superior, Plaintiff states only that all negligent acts committed by employees were done "with the consent and assistance of their employers, thereby imposing direct, indirect, and vicarious liability on Defendant." (*Id.* at PageID.20.) For the reasons below, the Court GRANTS summary judgment to Defendant on both of these claims.

Michigan courts will collapse premises liability and ordinary negligence claims when "the plaintiff's injury arose from an allegedly dangerous condition on the land . . . even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v. Trinity Continuing Care Services*, 296 Mich. App. 685, 692 (2012) (quoting *James v. Alberts*, 464 Mich. 12, 18-19 (2001)). In *Buhalis*, the plaintiff sued a landowner for premises liability and ordinary negligence after the plaintiff slipped and fell on some ice on the

defendant's patio. *Id.* at 689. In consolidating and dismissing the two separate claims, the Court of Appeals held the following:

> Here, Ms. Buhalis alleged that she was injured when she slipped on ice and fell; that is, she alleged that she was injured when she encountered a dangerous condition on Trinity's premises. Though she asserted that Trinity's employees caused the dangerous condition at issue, this allegation does not transform the claim into one for ordinary negligence. Rather, she clearly pleaded a claim founded on premises liability. Therefore, Ms. Buhalis's negligence claim is a common-law premises liability claim and, to the extent that she purported to allege an ordinary negligence claim in addition to her premises liability claim, the trial court should have dismissed that claim.

*Id.* at 692. The Michigan Supreme Court recently reaffirmed this principle in *Kachudas v. Invaders Self Auto Wash*: "Although an injured person may pursue a claim in ordinary negligence for the overt acts of a premises owner on his or her premises, the plaintiff in this case is alleging injury by a condition of the land, and as such, his claim sounds *exclusively* in premises liability." 436 Mich. 913, 913 (2010) (emphasis added).

Plaintiff's negligence and respondeat superior theories both sound in premises liability because they condition Defendant's liability on Defendant having created a dangerous condition on the land. For this reason, under Michigan law, both of these claims are more properly

13

brought under Plaintiff's premises liability theory. Consistent with Michigan court practice, the Court therefore GRANTS summary judgment to Defendant as to negligence and respondeat superior.

3. Nuisance

Finally, Plaintiff brings a nuisance claim against Defendant, arguing that Defendant "improperly operated and maintained the premises so that they allowed an improperly created/maintained slippery floor, such that it constituted a nuisance to Plaintiff . . . and others on the premises." (ECF No. 1, PageID.21.) For the reasons below, the Court GRANTS summary judgment to Defendant as to this claim.

A public nuisance is an "unreasonable interference with a common right enjoyed by members of a general public."[1] *Tosa v. Yono*, No. 274301, 2008 WL 723979, at *5 (Mich. Ct. App. March 18, 2008) (citing *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 213 Mich. App. 186, 190 (1995)). The unreasonable interference must generally "significantly affect the public's health, safety, peace, comfort, or convenience, or be of a

---

[1] Though Plaintiff does not specify the kind of nuisance claim she brings, any claim of private nuisance would be inapplicable here because Plaintiff's fall did not occur on her own property. *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 302 (1992) ("The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question.").

continuing nature that produces a permanent or long-lasting, significant effect." *Knauf v. KJB Enterprises, Inc.*, No. 269449, 2006 WL 3500900, at *2 (Mich. Ct. App. Dec. 5, 2006) (citing *Cloverleaf*, 213 Mich. App. at 190). A private citizen may only succeed on a public nuisance claim when she can show that she suffered "a type of harm different from that of the general public." *Tosa*, 2008 WL 723979 at *5 (citing *Cloverleaf*, 213 Mich. App. at 190).

In this case, Plaintiff cannot demonstrate that the red Slurpee spill significantly affected the public's health, safety, peace, comfort, or convenience. Plaintiff's testimony demonstrates that the red Slurpee spill was in a visible, open space, and that the spill was avoidable. Michigan courts have routinely dismissed nuisance claims where the obstruction was avoidable by the general public. *See, e.g.*, *Holcomb v. GWT, Inc.*, No. 325410, 2016 WL 805635, at *9 (Mich. Ct. App. March 1, 2016) ("This small and obvious visual obstruction at the intersection of a public sidewalk . . . does not constitute a public nuisance."); *Holland v. State Farm Mut. Aut. Ins. Co.*, No. 322438, 2015 WL 5311590, at *10 (Mich. Ct. App. Sep. 10, 2015) ("Here, the general public exercising its right to use the sidewalk merely had to avoid or try and walk across or around the

15

icy condition. Its only harm was this inconvenience."); *Knauf*, 2006 WL 3500900 at *2 ("The isolated patch of ice was completely avoidable by the general public, even those who wanted to enter the pub through its back entrance.")

Plaintiff also cannot demonstrate that the red Slurpee spill produced a permanent or long-lasting effect, as evidenced by Plaintiff's own photos demonstrating that the spill no longer existed approximately thirty minutes after the fall. *Knauf*, 2006 WL 3500900 at *2 (dismissing a nuisance claim in part because Plaintiff failed to demonstrate that the slippery ice "was permanent or long lasting, even during the winter months").

Because Plaintiff cannot demonstrate that the red Slurpee spill either significantly affected a relevant aspect of the public's wellbeing or was permanent or long-lasting, the Court GRANTS summary judgment to Defendant on this claim.

IV. **Attorney Fees**

Defendant also moves for an award of costs and attorney fees but has not briefed the issue. Defendant may submit a memorandum on this issue on or before three weeks from the date of this Order. Plaintiff's

response shall be due two weeks from the date that Defendant files its memorandum.

## V. Conclusion

For the reasons set forth above, the Court GRANTS Defendant's motion for summary judgment as to all claims (ECF No. 23);

Defendant may submit a brief on attorney fees as set forth above no later than three weeks from the date of this Order; and

Plaintiff may respond as set forth above no later than two weeks after the date of the memorandum.

IT IS SO ORDERED.

Dated: January 15, 2020      s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                                          United States District Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, January 15, 2020, using the Electronic Court Filing system and/or first-class U.S. mail.

                                     s/William Barkholz
                                     Case Manager